**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| HODES & NAUSER, MDs, P.A.; HERBERT C. HODES, M.D.; and TRACI LYNN NAUSER, M.D., </br></br> Plaintiffs, </br>and </br>CENTRAL FAMILY MEDICAL, LLC </br>dba AID FOR WOMEN, and RONALD N. YEOMANS, M.D. </br>           Plaintiffs/Interveners, </br> v. </br>ROBERT MOSER, M.D., in his official capacity as Secretary of the Kansas Department of Health and Environment; STEPHEN HOWE, in his official capacity as District Attorney of Johnson County; DEREK SCHMIDT, in his official capacity as Attorney General for the State of Kansas; and JEROME GORMAN, in his official capacity as District Attorney for Wyandotte County, </br>           Defendants. | Case No. 2:11-CV-02365-CM-KMH |

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER
AND SUPPORTING MEMORANDUM**

Defendants' contributions to the Parties' Report of Planning Conference indicate that they intend to seek discovery of the medical records of Plaintiffs' patients. Such discovery is utterly irrelevant to this action, is not likely to lead to the discovery of admissible evidence, would unjustifiably intrude on protected privacy interests of Plaintiffs' patients, and would impose significant, undue burdens on Plaintiffs given the volume of such medical records and the need to thoroughly review and redact the records of the extensive, potentially identifying information located within them. Moreover, courts in similar circumstances have refused to allow such discovery. Accordingly, Plaintiffs move, pursuant to Fed. R. Civ. P. 26 (c)(1) for a protective order precluding Defendants from pursuing discovery of the medical records of their

patients ("Medical Records").[1]

## I.     Background

This Section 1983 action is brought by board-certified obstetrician-gynecologists and their office-based medical practice, in which they provide comprehensive reproductive health care, including abortion services. *See, e.g.,* Compl. ¶¶ 1-3. Plaintiffs challenge newly-enacted Kansas laws that would force them to cease providing abortion services in their outpatient practice, and to rebuild their facility from the ground up in order to provide abortions in the future. *See* Compl. ¶¶ 33-64. They bring an as-applied challenge to the newly-enacted statute that authorizes the licensing scheme, and a facial and as-applied challenge to the temporary regulations adopted to implement the new law. More specifically, Plaintiffs challenge the constitutionality of (1) recently-enacted temporary regulations (the "Temporary Regulations") promulgated by Defendant Secretary of the Kansas Department of Health and Environment ("KDHE")[2] to govern facilities in which abortions are performed, and (2) the licensing provisions of the 2011 legislation that authorized specific regulations for abortion facilities, Kansas Senate Bill No. 36 (2011) ("Act"),[3] Act, at sec. 2, 8, as those provisions have been applied by KDHE to condition abortion facility licensing upon compliance with the Temporary Regulations, which were issued without notice or opportunity for comment just days before licensing was required (the "Licensing Process"). Compl. ¶ 1. Defendants are Kansas government officials with authority to enforce the challenged laws. Compl. ¶¶ 17-19.

Plaintiffs allege that the Licensing Process implemented by KDHE was a sham process that made it impossible for existing medical practices to obtain licenses; that the Temporary

---

[1] Plaintiffs have conferred in good faith with Defendants in an attempt to resolve the issues presented in this motion without court action, but were unable to do so.
[2] A copy of the regulations, which are to be codified at Kan. Admin. Regs. §§ 28-34-126 - 44 (2011), is attached to Plaintiffs' Complaint as Exhibit B.
[3] A copy of the Act is attached as Exhibit A to Plaintiffs' Complaint.

Regulations impose medically unnecessary requirements and were adopted without any notice and comment period or any opportunity for Plaintiffs to provide input or seek waivers; that the purpose and effect of the Licensing Process and Temporary Regulations is to impose an undue burden on women seeking abortions, and to unjustifiably disadvantage those physicians and medical practices that provide abortion services, and that the Temporary Regulations subject Plaintiffs to vague requirements.  Plaintiffs assert that the Temporary Regulations and Licensing Process violate their rights to substantive and procedural due process and subject them to vague requirements, impose an undue burden on their patients, and deny them and their patients equal protection of the laws.  Compl. ¶¶ 76-85.

## II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 26(c), this Court may, upon "good cause," issue a protective order limiting discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  The "good cause standard" contained in Rule 26(c) is "'highly flexible, having been designed to accommodate all relevant interests as they arise.'" *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999)). For the reasons explained below, such "good cause" exists here to preclude discovery of the Medical Records, because such discovery is unlikely to lead to the discovery of admissible evidence, would unjustifiably intrude on the privacy interests of Plaintiffs' patients, and would impose undue burdens on Plaintiffs.

## III.    The Medical Records Are Irrelevant To This Action And Are Not Likely to Lead to the Discovery of Admissible Evidence.

The factual matters relevant to resolution of Plaintiffs' claims for relief are: (a) the process and bases for the Temporary Regulations and for the actions taken by Defendants in the

3

Licensing Process; (b) the process afforded to Plaintiffs prior to any deprivation by Defendants of Plaintiffs' protected property or liberty interests; (c) the burdens imposed by the Temporary Regulations and Licensing Process; and (d) whether the Temporary Regulations and Licensing Process are adequately tailored to serve sufficiently weighty and legitimate state interests.  The Medical Records are utterly irrelevant to resolution of these issues, and there is no basis for believing that any information contained in the medical records is likely to lead to the discovery of admissible evidence in this case.[4]  The question of whether the Temporary Regulations are adequately justified by the nature and risks of abortion will turn on expert testimony and medical literature about the procedure, not on individual patients' medical records. As one court explained in denying a motion to compel discovery of patient medical records in a legal challenge to an abortion statute:

> Even if the [medical] records did contain [the information that the government seeks], they are marginally relevant at best because the presence or absence of medical risks and their likelihood and nature are going to be made not on the basis of individual patients' records but on the basis of expert testimony at trial.

*Planned Parenthood Fed'n of Amer., Inc. v. Ashcroft*, 2004 WL 432222, at *1 (N.D. Cal. 2004) (unpublished); *see also Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 928-29 (7th Cir. 2004) (stating, in quashing a subpoena for patient records in a challenge to abortion statute, "[we are] still at a loss to understand what [the Government] hopes to gain from . . . discovery [of the patients' medical records]"). This is simply not a case in which the medical conditions or histories of individual patients are at issue, or where those individual conditions or histories are probative of the matters in dispute.

---

[4] This is particularly so given that the information contained in the patient medical records has not been available to Defendants and therefore was plainly not used by Defendants as a basis for the regulations.   Defendants have made no claim (and have no basis for make any such claim) that the Temporary Regulations and Licensing Process were responsive to events or circumstances at Plaintiffs' medical practice.

## IV.     Discovery Of The Medical Records Would Unjustifiably Intrude On Plaintiffs' Patients Protected Privacy Interests.

Patient medical records are among the most private of documents.  They contain highly personal information about individuals' health conditions, medical and psychological history, personal relationships, and treatment.  For this reason, such medical records are subject to stringent state and federal protections against disclosure.[5]  *See, e.g.*, Kan. Stat. Ann. § 60-427 (establishing privilege for communications between a physician and patient in connection with medical treatment); *Wesley Med. Ctr. v. Clark*, 234 Kan. 13 (Kan. 1983) (noting that pursuant to Kansas' physician-patient privilege, a physician may not, absent statutory authority, reveal information subject to the privilege without the knowledge and consent of the patient); *see generally*, 42 U.S.C.A. §1320d *et seq* (Health Insurance Portability and Accountability Act ("HIPAA"); *see* 45 CFR 164.512(e) (delineating conditions, procedures and protections required for disclosures of patient information under HIPAA).  Highly personal information of the type contained in medical records is also subject to constitutional privacy protections.  *See, e.g., Eastwood v. Dep't of Corrs.*, 846 F.2d 627, 630-31 (10th Cir. 1988) (recognizing that federal right to privacy "protects two kinds of privacy interests," the first of which is "the individual's interest in avoiding disclosure of personal matters").

Further, the sensitive nature of medical records is heightened in the field of obstetrics and gynecology, because medical records in that field contain information about women's sexual and reproductive health and histories.  Moreover, to the extent those records contain information about an abortion, disclosure may cause patients additional embarrassment or lead to harassment and/or retaliation.  *See Nw. Mem'l Hosp.*, 362 F.3d at 929 (noting that women whose medical

---

[5] Although a state law privilege does not control a federal question action in federal court, *Nw. Mem'l Hosp.*, 362 F.3d at 925, a federal court may consider the impact on such a privilege in its assessment of the potential burdens of discovery, and it should respect the state law privilege where doing so "would not interference significantly with federal proceedings." *Id*. at 932-33.

records were sought in a legal challenge to an abortion statute would fear that their identities would be discovered and that they would be subject to threats and harassment); *see also Alpha*, 280 Kan. at 922 (information in abortion patients' medical records "could hardly be more sensitive, or the potential harm to patient privacy posed by disclosure more substantial").

Defendants show little concern for the private nature of the Medical Records, suggesting that any privacy concerns would be addressed by redacting the Medical Records of identifying information. But redacting an abortion patient's medical record of "identifying information" does not necessarily protect the patient from identification based on other information contained in the record. The Seventh Circuit explained this concern when it quashed a subpoena for patient medical records in a challenge to a federal abortion law:

> Some of these women will be afraid that when their redacted records are made a part of the trial record in New York, persons of their acquaintance, or skillful "Googlers," sifting the information contained in the medical records concerning each patient's medical and sex history, will put two and two together, "out" the 45 women, and thereby expose them to threats, humiliation, and obloquy. As the court pointed out in *Parkson v. Central DuPage Hospital* [61 Ill. Dec. 651 (Ill. App. 1982)], "whether the patients' identities would remain confidential by the exclusion of their names and identifying numbers is questionable at best. The patients' admit and discharge summaries arguably contain histories of the patients' prior and present medical conditions, information that in the cumulative can make the possibility of recognition very high."

*Nw. Mem'l Hosp.*, 362 F.3d at 929 (quoting *Parkson*, 61 Ill. Dec. at 655); *see also Planned Parenthood Fed'n of Amer., Inc.*, 2004 WL 432222, at *2 ("Although the government has agreed to the redaction of names, addresses, birthdates, and other objectively identifying information, the records nevertheless contain other potentially identifying information of an extremely personal and intimate nature, including, among others, types of contraception, sexual abuse or rape, marital statutes, and the presence of absence of sexually transmitted diseases.").

Indeed, past experience with the Kansas Attorney General's office in other abortion-

6

related cases has demonstrated that the Attorney General's office did not respect the privacy of the individuals whose redacted medical records were produced, but instead used those medical records to obtain the identities of women who have had abortions. In 2005, the late Dr. George Tiller produced redacted patient records to the Kansas Attorney General pursuant to a subpoena. The Attorney General then subpoenaed the records of a hotel where patients of the abortion provider were known to stay. By comparing the two sets of records, the Attorney General's staff was able to identify many of the patients. *See* Formal Complaint at ¶ 15, *In re Phillip D. Kline*, Nos. DA10,088 & DA10,598 (Kan. Bd. Discipline Att'ys 2010) (attached hereto as Ex. A). If discovery of the Medical Records is permitted, Plaintiffs patients' will justifiably fear disclosure of their identities and medical treatments.

Defendants' position also ignores the fact that even if the records are redacted sufficiently to prevent identification, review of the records by strangers is harmful in and of itself: "[I]n the same vein that a voyeur observing in secret invades the subject's privacy—even if the subject's identity is not known—an abortion patient's privacy rights can be encroached by the nonconsensual review of redacted abortion records." *Roe v. Planned Parenthood Sw. Ohio Region*, 878 N.E.2d 1061, 1069 (Ohio Ct. App. 2007). The Seventh Circuit has held similarly:

> Even if there were no possibility that a patient's identity might be learned from a redacted medical record, there would be an invasion of privacy. Imagine if nude pictures of a woman, uploaded to the Internet without her consent though without identifying her by name, were downloaded in a foreign country by people who will never meet her. She would still feel that her privacy had been invaded.

*Nw. Mem'l Hosp.*, 362 F.3d at 929. Disclosure of the Medical Records to state officials, whether the records are redacted or not, would be a profound intrusion on Plaintiffs' patients' privacy, and would threaten to expose Plaintiffs' patients to embarrassment, distress, harassment and other harms.

7

## V.     The Discovery Sought By Defendants Is Unduly Burdensome On Plaintiffs

Finally, discovery of the Medical Records would unduly burden Plaintiffs. Plaintiffs' practice has been in existence for over thirty years. Thus, Plaintiffs possess thousands and thousands of medical records, the vast majority of which do not exist in electronic form. Many, if not all, of these records contain one or more of the terms that Defendants have listed as indicators of potential relevance in the Report of Parties' Pretrial Conference. For instance, the term "complications" is likely to appear in the informed consent information of every patient who underwent any type of procedure performed by Plaintiffs. The discovery sought by Defendants would require extensive manual searches and review of many thousands of documents. Moreover, because of the nature of those records, production would require comprehensive, manual redaction of the potentially-identifying information located throughout each record. Such redaction would, at a minimum, need to include obviously identifying information such as: names (of the patient, relatives, employers, household members, etc.); geographic subdivisions smaller than a state; all elements of dates (except year) for dates related to an individual; telephone numbers; fax numbers; electronic mail addresses; social security numbers; medical record numbers; health plan beneficiary numbers; account numbers; certificate/license numbers; vehicle identifiers; device identifiers and serial numbers; and any other unique identifying number, characteristic, or code. 45 CFR § 164.514. To prevent possible identification, such redactions would also need to include information from the patient's history and treatment that might identify her to someone who knows her. *See Nw. Mem'l Hosp.*, 362 F.3d at 929 (noting that patients' histories and medical treatment may permit identification); *see also Planned Parenthood Fed'n of Amer.,* 2004 WL 432222, at \*2 (same). The time, effort and expense that would be required on Plaintiffs' part to conduct an adequate review and redaction of the Medical Records would be excessive, and far outweighs the infinitesimal chance

that Defendants might unearth any relevant information. Thus, discovery of the Medical Records is unduly burdensome.

The discovery sought will also unduly burden Plaintiffs because it will threaten to destroy the confidence their patients place in them, which is a critical aspect of the physician-patient relationship. As the Seventh Circuit noted in rejecting the disclosure of abortion patients' medical records:

> If Northwestern Memorial Hospital cannot shield the medical records of its abortion patients from disclosure in judicial proceedings . . . the hospital will lose the confidence of its patients, and persons with sensitive medical conditions may be inclined to turn elsewhere for medical treatment.

*Nw. Mem'l Hosp.*, 362 F.3d at 929. A district court in California has held similarly:

> Moreover, the potential for injury to the relationship between patient and provider is significant given the providers' pledge of confidentiality. As set forth in the amicus brief filed by the California Medical Association, allowing disclosure of the records will have a chilling effect on communications between patients and providers.

*Planned Parenthood Fed'n of Amer.,* 2004 WL 432222, at *2. There is no reason that the patients who have entrusted their care to Plaintiffs should be forced to endure the prospect that their medical records will be pored over by third parties. Such a prospect would undoubtedly be daunting to many of Plaintiffs' patients, and would cause them concern about continuing treatment with the trusted physicians they have chosen. This potential for significant harm to the relationships Plaintiffs have developed with their patients is wholly unjustified in this case: Plaintiffs' patients have a right to expect that their medical records will be accorded the utmost privacy and protection, and that expectation cannot be trumped by an unnecessary fishing expedition with no articulable potential for finding relevant information.

**VI.     Conclusion**

For the reasons set forth above, Plaintiffs respectfully request that the Court enter a protective order pursuant to Fed. R. Civ. P. 26 (c)(1) precluding Defendants from pursuing discovery of the medical records of Plaintiffs' patients.

>  Respectfully submitted,
>  **s/ Teresa Woody**_____
>  Teresa A. Woody, KS Bar #16949
>  The Woody Law Firm PC
>  1621 Baltimore Ave.
>  Kansas City, MO 64108
>  (816) 421-4246 Phone
>  (816) 471-4883 Fax
>  teresa@woodylawfirm.com
>
>
>  Bonnie Scott Jones*
>  Kara Loewentheil*
>  Center for Reproductive Rights
>  120 Wall Street, 14th Floor
>  New York, NY 10005
>  (917) 637-3600
>  (917) 637-3666 Fax
>  bjones@reprorights.org
>  kloewentheil@reprorights.org
>
>  * admitted pro hac vice
>
>  ATTORNEYS FOR PLAINTIFFS HODES
>  AND NAUSER, MDS., P.A., DR. HODES
>  AND DR. NAUSER
>
>  Cheryl Pilate
>  Morgan Pilate LLC
>  142 N. Cherry
>  Olathe, KS 66601
>  (913) 829-6336
>  (913) 829-6446 Fax
>  cpilate@morganpilate.com
>
>  ATTORNEY FOR PLAINTIFFS-
>  INTERVENORS AID FOR WOMEN
>  AND DR. YEOMANS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF filing system on August 15, 2011, which system sent notification of such filing electronically to the following counsel of record:

Todd N. Thompson
Robert W. Ramsdell
Sarah E. Warner
Stephen R. McAllister
Thompson, Ramsdell & Qualseth, P.A.
333West Ninth Street
Lawrence, KS 66044

Jeffrey A. Chaney
Steve R. Fabert
Office of the Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612

ATTORNEYS FOR DEFENDANTS


Thomas M. Dawson
KS Bar No. 6599
2300 South 4th Street
Leavenworth, KS 66048

Andrew  L. Schlafly
Attorney at Law
N.J. Bar No. 04066-2003
939 Old Chester Rd.
Far Hills, NJ 07931

ATTORNEYS FOR MOVANT APPLOG


                                                       **s/ Teresa Woody**_____
                                                       Attorney for Plaintiffs/Appellees
                                                       Hodes and Nauser, MDs., P.A.,
                                                       Dr. Hodes and Dr. Nauser